IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| ROBERT W. ISHMAEL, SR., | : |
|                 DEBTOR. | : BANKRUPTCY NO. 05-16306SR |
| RICHARD NELSON, | : |
|                 PLAINTIFF | : |
|     V. | : |
| ROBERT ISHMAEL, | : |
|               DEFENDANT. | : ADV. NO. 07-287 |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is Debtor's Motion Pursuant to Rule 12(b)(6) to Dismiss the Complaint ("Motion") in this dischargeability action for failure to state a claim.[1] While the Complaint does not refer to any specific dischargeability exception,[2] Plaintiff asserts in his response to the

---

[1] Debtor's Chapter 7 bankruptcy case was commenced in May of 2005 and closed in September of the same year. However, on July 19, 2007, the Court reopened the case to allow plaintiff, Richard Nelson, a sixty day period of time to institute a dischargeability action against the Debtor. *See* Bankruptcy Case No. 05-16306, Docket Entry #27. Plaintiff was given this opportunity because, even though the parties had been in litigation in state court prior to, during and after the closure of Debtor's Chapter 7, Debtor failed to advise Plaintiff that he had filed for bankruptcy and failed to list Plaintiff as a creditor in his bankruptcy case. *See* Transcript, dated July 19, 2007.

[2] The prayer for relief in Plaintiff's Complaint fails to demands a judgment of nondischargeability. Debtor contends the Complaint should be dismissed on this basis. Federal Rule of Civil Procedure 8(a), which is applicable hereto pursuant to Federal Rule of Bankruptcy Procedure 7008, requires a plaintiff to include in his pleading a "demand for judgment for the relief which the pleader seeks." Fed.R.Civ.P. 8(a). However, Plaintiff's failure to request a

(continued...)

Motion that the Complaint states claims under §523(a)(2)(A) and §523(a)(4). *See* Creditor Richard Nelson's Answer to the Motion of the Debtor Pursuant to Rule 12(b)(6) ("Plaintiff's Answer to Motion"). Following the hearing on the Motion, the Court took this matter under advisement. For the reasons set forth below, the Motion shall be denied.

*Background*

The facts set forth herein are based upon the allegations set forth in the Complaint and its attachments. The factual allegations of the Complaint are accepted as true.[3]

Debtor's primary business is the brokering of insurance coverage. Complaint ¶ 3. He operates the business using various trade names, including Ishmael Insurance Associates and Ishmael Insurance Agency. *Id.*

On September 9, 2002, Plaintiff purchased automobile insurance through Debtor for his 2001 Nissan Maxima.[4] *Id.* ¶ 5. The insurance which Plaintiff purchased was a split policy, with

---

[2](...continued)
judgment of nondischargeability is not, in and of itself, fatal to his claims. *See Rueda v. AmeriFirst Bank*, 1991 WL 25565, at *3 (E.D. Pa. Feb. 25, 1991) ("The sufficiency of the pleading is not dependent on the specific demand for judgment made, but rather on whether all the elements of the claim are asserted and some type of relief is available.").

[3] Debtor contends that Plaintiff's Complaint in this adversary action "appears" to be a copy of the complaint which he filed in state court. Motion §4. Debtor further asserts that since Plaintiff prevailed on his breach of contract claim and not on his fraud claim in state court, Plaintiffs' claims in this adversary proceeding are barred by res judicata. *Id.* §5. However, res judicata does not bar the Court from reviewing the nature of the debt in question since federal courts have exclusive jurisdiction over actions to determine dischargeability under §523(a)(2) and §523(a)(4). *See Clemens v. Cobley (In re Cobley)*, 89 B.R. 446, 447-48 (Bankr. E.D. Pa. 1988). *See also Countrywide Home Loans, Inc. v. Blair (In re Blair)*, 324 B.R. 725, 731 (Bankr. W.D. Ark. 2005) (concluding that res judicata was inapplicable because dischargeability proceedings are unique to bankruptcy and, therefore, the complaint in state court and the adversary proceeding could not involve the same causes of action).

[4] Plaintiff alleges that he obtained insurance from Debtor in reliance upon his
(continued...)

coverage being purchased from multiple insurers. *Id.*¶ 9.  The property damage coverage was from Personal Surplus Lines, Inc.[5]  *Id.*

Plaintiff provided Debtor with a Power of Attorney authorizing him to complete and sign any forms required to procure his auto insurance and their renewals.  *Id.* ¶ 6 and Exhibit B to the Complaint.[6]  Plaintiff made his premium payments to Debtor who then forwarded the payments to the insurers except when Debtor made the payments directly using Plaintiff's credit card information.  Complaint ¶ 10.  Plaintiff provided Debtor with his credit card information for this purpose. *Id.*¶ 7.

On November 13, 2002, Plaintiff contacted Debtor to check on his insurance and was informed that a payment was due.  *Id.* ¶ 19.  He authorized Ishmael Insurance Agency to utilize his credit card information to make the payment.  *Id.*  Debtor, himself or through an employee, made a credit transaction utilizing Plaintiff's credit card, representing to Plaintiff that the credit transaction was being made to pay his insurance premium.  *Id.* ¶¶ 19-20.[7]

---

[4](...continued)
representation that he was a lawful insurance agent of the involved insurers and that he was authorized to act on behalf of such insurers when he was, in fact, not an agent for Personal Lines Surplus, Inc. but rather acted only as a broker for the same.  Complaint ¶ 28.  Insofar as the Court can ascertain, this distinction is irrelevant to Plaintiff's nondischargeability claims under §523(a)(2)(A) or §523(a)(4).

[5] Besides Personal Surplus Lines, the only other insurer mentioned in the Complaint is Nationwide.  *See* Complaint ¶ 16.

[6] Exhibit B is the Power of Attorney.

[7] In paragraphs 19 and 20, Plaintiff refers to a single credit transaction having been made on November 13, 2002 with his credit card.  However, in paragraph 33, plaintiff alleges that "Defendant obtained the Plaintiff's credit information for the stated purpose of paying the Plaintiff's insurance premium, conducted a transaction or <u>transactions</u> involving said credit card, and did not pay the Plaintiff's premium, resulting in cancellation of the policy."  Complaint ¶33
(continued...)

On November 21, 2002, Plaintiff traded in his Nissan Maxima and purchased a 1999 Honda Accord LX. *Id.* ¶ 11. As part of the purchase, the car salesperson telephoned Debtor to verify that Plaintiff was currently insured and to have his insurance transferred from the Maxima to the Accord. *Id.* ¶ 12. Debtor fraudulently represented that Plaintiff was fully insured, including for loss of the vehicle. *Id.* ¶¶ 13, 20. However, Plaintiff's insurance had "lapsed" on November 14, 2002 for non-payment of premium. *Id.* ¶¶ 13, 21. Relying upon Debtor's false representation that Plaintiff was insured: (i) Plaintiff opted not to purchase insurance that was available at the dealership nor did the dealership offer him available lot coverage; (ii) the car dealership obtained financing for Plaintiff from America Honda Finance and completed the sale; and (iii) Plaintiff purchased the vehicle. *Id.* ¶ 14, 32.

Debtor thereafter prepared a Policy Change/Endorsement Form transferring Plaintiff's Personal Lines Surplus Coverage which covered Plaintiff's property damage to the Honda Accord and adding American Honda Finance as an additional insured. *Id.* ¶ 15. Debtor also prepared a coverage change form for Nationwide, transferring coverage to the Honda. *Id.* ¶ 16.

On November 30, 2002, Plaintiff's Honda Accord was stolen. *Id.* ¶ 17. Plaintiff promptly notified Debtor of the loss so that payment for the loss could be made to American Honda Finance. *Id.* ¶ 18. Upon reporting the loss, he was informed that although his credit card had been used on November 13, 2002 to make a credit transaction, the payment on his vehicle

---

[7](...continued)
(underlining added). This paragraph suggests that there may have been multiple credit transactions that were made with plaintiff's credit card for some purpose other than the payment of his insurance premiums. However, no specific information is provided regarding any credit transaction involving Plaintiff's credit card other than the transaction that occurred on November 13, 2002.

loss insurance had not been made  *Id.* ¶ 20.  As a result of the lapse of Plaintiff's insurance, he was without vehicle property damage/theft coverage when his Honda Accord was stolen.  *Id.* ¶ 21-22.

Plaintiff has been held liable by American Honda Finance for the full balance of his credit account with them.  *Id.* ¶ 23.  In addition, American Honda Finance reported Plaintiff's non-payment of his account with them to credit reporting agencies which negatively affected his credit rating.  *Id.* ¶ 24.  Because of his negative credit rating, Plaintiff's ability to obtain credit was affected and he was denied business and other opportunities.  *Id.* ¶ 25.  The damages which Plaintiff has suffered are the result of Debtor's fraud.  *Id.* ¶ 26

***Standard of Review Under Rule 12(b)(6)***

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.  *Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The court must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, ___ U.S. ___, ___, 127 S. Ct. 2197, 2200 (2007), and view all reasonable factual inferences in the light most favorable to the plaintiff, *Angelastro v. Purdential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).  However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (1997).  The plaintiff must allege facts sufficiently detailed to "raise a right to relief above the speculative level." *Bell Atlantic Corporation v. Twombly*, ___ U.S. ___, ___, 127 S.Ct. 1955, 1959 (2007).

*Purpose of Dischargeability Exceptions*

The principle purpose of the Bankruptcy Code is to grant a fresh start to the poor but honest debtor. *See Marrama v. Citizens Bank*, ___ U.S. ___, ___, 127 S.Ct. 1105, 1107 (2007). The Bankruptcy Code provides "a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (*quoting Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). However, since it is only the honest but unfortunate debtor who is entitled to "a completely unencumbered new beginning", *Grogan*, 498 U.S. at 287, the Bankruptcy Code excepts certain debts from discharge.

**Analysis of Plaintiff's Nondischargeability Claims under Rule 12(b)(6)**

**(A) 11 U.S.C. §523(a)(2)(A)**

A debt may be excepted from discharge under §523(a)(2)(A) if it was "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent it was obtained by false pretenses, a false representation or actual fraud." 11 U.S.C. §523(a)(2)(A). The elements of a claim under §523(a)(2)(A) for false or fraudulent representations are the following: (1) the debtor made a representation knowing at the time that it was false; (2) the debtor made the representation with the intent and purpose of deceiving the plaintiff; (3) the plaintiff justifiably relied on the debtor's false representation; and (4) the plaintiff suffered a loss or damage as a proximate consequence of the representation having been made. *Stevens v. Antonious (In re Antonious)*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006).

Debtor contends that Plaintiff has failed to state a claim under §523(a)(2)(A) because

there is no allegation in the Complaint that Debtor obtained "money, property or services" from him as a result of his alleged false representations. *See* Debtor's Motion Pursuant to Rule 12(b)(6) to Dismiss Complaint at 2. Courts have recognized that a threshold requirement of the discharge exception of §523(a)(2)(A) is that the debtor obtained "money, property, services, or an extension, renewal or refinancing of credit" as a result of his "false pretenses, false representation or actual fraud." *See Fledderman v. Glunk (In re Glunk)*, 343 B.R. 754, 758 (Bankr. E.D. Pa. 2006); *Telmark, LLC v. Booher (In re Booher)*, 284 B.R. 191, 200 (Bankr. W.D. Pa. 2002); *Wilcoxon Construction, Inc. v. Woodall (In re Woodall)*, 177 B.R. 517, 523 (Bankr. D. Md. 1995); 4 Collier on Bankruptcy ¶523.08[1][a] (15th ed.) ("For a debt to fall within this exception, money, property or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations or by means of actual fraud.") . *See also Cohen v. De La Cruz*, 523 U.S. 213, 213-14 (1998) (reasoning that the phrase "to the extent obtained by" in §523(a)(2)(A) "makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt."). In other words, even assuming that a debtor knowingly made a fraudulent or false representation, he must have obtained money, property or services as a result of the representation to fit within the discharge exception under §523(a)(2)(A). Viewing all reasonable inferences in the light most favorable to the Plaintiff, the Court concludes that this threshold requirement has been met.

      The Complaint alleges that: (i) Plaintiff provided his credit card information to Debtor for the purpose of paying his insurance premiums; (ii) Plaintiff specifically authorized Debtor to use the credit card on November 13, 2002, to pay the premium that was due on his insurance; (iii) Debtor or one of his employees used the credit card on the aforementioned date to make a

credit transaction; (iv) Debtor represented to Plaintiff that the credit card was used to pay his insurance; and (iv) Plaintiff's credit card was not used to pay his insurance premium. These allegations logically lead to the inference that Debtor and not Plaintiff obtained "money, property or services" through the use of Plaintiff's credit card. No other reasonable inference exists.

Debtor also asserts that Plaintiff's Complaint should be dismissed because it fails to comply with Fed.R.Civ.P. 9(b) which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[8] Courts have held that Rule 9(b) applies to §523(a)(2)(A) actions alleging fraud. *See, e.g., Stello v. Aikin (In re Aikin)*, 2007 WL 3305364, at *2 (Bankr. D. D.C. Nov. 5, 2007); *Fledderman*, 343 B.R. at 757. To satisfy the pleading requirements of Rule 9(b), a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (*quoting Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)). Plaintiff has plainly met this requirement here.

The Complaint states with particularity the "precise misconduct" with which Debtor is charged, namely that he fraudulently represented to Plaintiff that: (i) his credit card was used to pay his insurance premium; and (ii) Plaintiff was fully insured. The Complaint describes, in detail, the events leading up to these representations and the specific dates upon which they were made.

In sum, the factual allegations contained in the Complaint are more than sufficient to

---

[8] Rule 9(b) is applicable to this proceeding pursuant to Fed.R.Bankr.P. 7009.

raise Plaintiff's right to relief under §523(a)(2)(A) "above a speculative level." Accordingly, his Complaint states a claim upon which relief can be granted under §523(a)(2)(A).

### *(B) 11 U.S.C. §523(a)(4)*

Pursuant to §523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is excepted from discharge. Plaintiff contends that he has stated a claim under this exception because Debtor committed fraud while acting in a fiduciary capacity. See Complaint ¶8. See also Plaintiff's Answer to Motion.

The Third Circuit has not ruled on the meaning of the phrase "fiduciary capacity" in terms of §523(a)(4);[9] however, many courts have, including other Courts of Appeal. The concept of a "fiduciary" has been narrowly construed under §523(a)(4). *See Board of Trustees of the Ohio Carpenters' Pension v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007); *Hunter v. Philpott*, 373 F.3d 873, 875-76 (8th Cir. 2004); Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003); *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 186 (5th Cir. 1997). A debtor may be a fiduciary under state law "while not qualifying as such for purposes of §523(a)(4)." *Ginsburg v. Birenbaum (In re Birenbaum)*, 2006 WL 1997478, at *7 (Bankr. W.D. Pa. July 7, 2006).

The concept of fiduciary for purposes of §523(a)(4) has generally been held to apply only

---

[9] In *Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273 (3d Cir. 1991), which involved an attorney "who misappropriated money entrusted to him by his clients," the Third Circuit acknowledged that "some courts have considered the criteria for establishing a 'fiduciary capacity' under 11 U.S.C. §523(a)(4) are generally more narrow than those criteria comprising the broader meaning of fiduciary as a relationship involving trust, good faith, and confidence," but concluded that the distinction was inapplicable to the matter before it since, even under the narrow definition, the criteria was met. *Id*. at 278.

in situations in which an express or technical trust exists.[10] *Fowler & Peth, Inc. v. Regan (In re Regan)*, 477 F.2d 1209, 1211 n.1 (10th Cir. 2007); *Schwager*, 121 F.3d at 185; *Lewis*, 97 F.3d at 1187; *Ginsburg*, 2006 WL 1997478, at *7 (Bankr. W.D. Pa. July 7, 2006); *Estate of Harris*, 312 B.R. at 777. "The fiduciary (the debtor) must hold an express or technical trust on behalf of the beneficiary (the creditor)." *International Fidelity Insurance Company v. Marques (In re Marques)*, 358 B.R. 188, 194 (Bankr.E.D. Pa. 2006). The required trust must have existed prior to or independent of the particular transaction from which the debt arose. *Pennsylvania Lawyers Fund for Client Security v. Baillie (In re Baillie)*, 368 B.R. 458, 469 (Bankr. W.D. Pa. 2007). *See also International Fidelity Insurance Company*, 358 B.R. at 194 ("The fiduciary relationship

---

[10] The meaning of the term "fiduciary capacity" in §523(a)(4) has also been held by the Seventh Circuit Court of Appeals to apply to relationships where there is "a difference in knowledge or power between the fiduciary and principal which ...gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) (citation omitted). Expanding on this application of the term "fiduciary capacity," the Seventh Circuit Court of Appeals stated:

> The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act on it. These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation of arm's length between equals.

Id. The Second Circuit Court of Appeals has similarly held that the defalcation exception under §523(a)(4) applies to positions such as public officers, executors, administrators, guardians and trustees, reasoning that the "common link" among such positions is that they "involve 'a difference in knowledge or power between the fiduciary and principal which ... gives the former a position of ascendancy over the latter.'" *Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 167 (2d Cir. 1999) (*quoting In re Marchiando*, 13 F.3d at 116 (citations omitted)).

must have existed prior to or independent of the particular transaction from which the debt arose.").

While an express or technical trust may be established by a formal trust agreement, it may also be based on "'relationships in which trust type obligations are imposed pursuant to statute or common law.'" *Windsor v. Librandi (In re Librandi)*, 183 B.R. 379, 382 (M.D. Pa. 1995) (*quoting LSP Investment Partnership v. Bennett (In re Bennett)*, 989 F.2d 779, 784-85 (5th Cir. 1993)). Federal law governs the meaning of the phrase "fiduciary capacity" for purposes of §523(a)(4), but state law is used to determine whether trust obligations exist. *Estate of Harris*, 312 B.R. at 777; *International Fidelity Insurance Company*, 358 B.R. at 194.

In *Graves v. James (In re James)*, 94 B.R. 350 (Bankr. E.D. Pa. 1988), the bankruptcy court was confronted with a similar factual situation. The plaintiffs paid the defendant, who was a licensed insurance agent and the sole proprietor of an insurance agency, to purchase an insurance policy to cover the building in which they operated their business. For two consecutive years, defendant purchased the policy. However, in the subsequent two years, even though plaintiffs paid defendant for the policy, defendant never purchased it. A fire occurred at the plaintiffs' business and they were not insured. Plaintiffs sought to have defendant's debt to them held nondischargeable pursuant to §523(a)(4). The bankruptcy court ruled that, for purposes of §523(a)(4), the defendant had been acting in a fiduciary capacity. Explaining the rationale for its ruling, the bankruptcy court succinctly stated:

> [A] fiduciary relationship was created between the defendant, as agent, and the plaintiffs because money was paid over by the plaintiffs to the insurance agency in express trust for the purpose of purchasing fire coverage from the insurer. ... [U]nder such circumstances, the policy payment, less the defendant's commission, was the trust res. That res was to be used to purchase

insurance for the plaintiff's benefit.

94 B.R. at 353.[11] As authority for its ruling, the bankruptcy court cited to *Hamby v. Saint Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954). This case involved a real estate agent who misappropriated money with which he had been entrusted by a buyer to pay off liens and claims against the property. Under state law, the real estate agent occupied a fiduciary relationship to her client. The Fourth Circuit concluded that since the agent was a fiduciary under state law and had been entrusted with money to be applied to a specific purpose, the real estate agent had been acting in a fiduciary capacity when he misappropriated the money. The Fourth Circuit reasoned: "Not all agents act in a fiduciary capacity; but, certainly, an agent is acting in such capacity when he is handling funds which have been entrusted to him for a specific purpose." *Id.* at 80.

In the instant case, Plaintiff entrusted Debtor with Plaintiff's credit card information for the express purposes of paying his insurance premiums. Like the payments which constituted the trust res in *Graves*, the credit card information constituted the trust res in this case. The credit card, as the res, was to be used by Debtor to pay the premiums owed on Plaintiff's insurance for his benefit.

Moreover, in the instant case like in *Hamby*, Debtor had a fiduciary relationship with Plaintiff. In this case, the fiduciary relationship arose from the Power of Attorney which Plaintiff executed in Debtor's favor and Pennsylvania statutory law, 20 Pa.C.S.A. §5601(e),

---

[11] The defendant in *Graves* admitted to the existence of an express trust apparently based on both parties' contentions that they had a fiduciary relationship pursuant to a Pennsylvania statute, 40 P.S. §273.1 (repealed 2002), entitled "Fiduciary Capacity of Agents and Brokers." *See Graves*, 94 B.R. at 353. However, the bankruptcy court concluded that the statute was irrelevant to the determination of whether the defendant was acting in a fiduciary capacity since the statute dealt with the relationship between an insurance agent and an insurer rather than an agent and an insured.

which provides that "[a]n agent acting under a power of attorney has a fiduciary relationship with the principal." 20 Pa.C.S.A. §5601(e).[12] As a fiduciary entrusted with Plaintiff's credit card information for a specific purpose, the Debtor was acting in a fiduciary capacity for purposes of §523(a)(4).

The issue of whether the Complaint adequately pleads fraud was addressed above and resolved in Plaintiff's favor. Therefore, the Court concludes that the Complaint states a claim for relief under §523(a)(4) for fraud while acting in a fiduciary capacity.[13]

Moreover, even if Debtor was not acting in a fiduciary capacity, the exception to discharge under §523(a)(4) also applies to any debt for "embezzlement" or "larceny." *Ginsburg*, 2006 WL 1997478, at *8 (Bankr. W.D. Pa. July 7, 2006). "A debtor need not act in a fiduciary capacity when committing embezzlement or larceny for the resulting debt to be excepted from discharge by §523(a)(4)." *Id*. at *8; *Webber v. Giarratano (In re Giarratano*, 299 B.R. 328, 337 (Bankr. D. Del. 2003), *aff'd*, 358 B.R. 106 (D. Del. 2004).

---

[12] The statute, 20 Pa.C.S.A. §5601(e), requires agents in a fiduciary relationship to:

(1) Exercise the powers for the benefit of the principal.

(2) Keep separate the assets of the principal from those of the agent;

(3) Exercise reasonable caution and prudence;

(4) Keep a full and accurate record of all actions, receipts and disbursements on behalf of the principal.

20 Pa.C.S.A. § 5601(e).

[13] As noted above, §523(a)(4) also applies to defalcation while acting in a fiduciary capacity.

Embezzlement is the "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'"[14] *Borchardt v. Ferrell (In re Ferrell)*, 2006 WL 1997423, at * 9 (Bankr. E.D. Pa. June 14, 2006) (*quoting Moore v. United States*, 160 U.S. 268, 269 (1895)).  To prove a debtor committed embezzlement within the meaning of §523(a)(4), a plaintiff must establish that: (1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent.  *Ginsburg*, 2006 WL 199478, at *8 (Bankr. W.D. Pa. July 7, 2006).

The Complaint alleges that Plaintiff entrusted Debtor to use Plaintiff's credit card on November 13, 2002 to pay his insurance premiums and that a credit card transaction occurred on that date, but Plaintiff's insurance premiums were not paid. The Complaint further alleges that, when Debtor was contacted before Plaintiff purchased his new car to confirm that Plaintiff's car insurance was fully intact, he fraudulently represented that it was. Based on these allegations, the Complaint also states a claim for embezzlement under §523(a)(4).

*Summary*

For the reasons set forth above, Debtor's Motion shall be denied.

By the Court:

Stephen Raslavich
Dated: January 7, 2008                     United States Bankruptcy Judge

---

[14] In contrast, larceny requires that "'the original taking of the property was unlawful.'" *Mosier v. Oxley (In re Oxley)*, 2007 WL 2407266, at *6 & n.24 (Bankr. D. Kan. August 20, 2007) (*quoting* 4 Collier on Bankruptcy ¶523.10[2] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007)).

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| ROBERT W. ISHMAEL, SR., | : |
|     DEBTOR. | : BANKRUPTCY NO. 05-16306SR |
| | : |
| RICHARD NELSON, | : |
|     PLAINTIFF | : |
|     V. | : |
| | : |
| ROBERT ISHMAEL, | : |
|     DEFENDANT. | : ADV. NO. 07-287 |
| | : |

# ORDER

**AND NOW**, this 7th day of January, 2008, upon consideration of the Debtor's Motion Pursuant to Rule 12(b)(6) to Dismiss the Complaint, it is hereby **ORDERED** that Debtor's Motion is **DENIED.**

    By the Court:

    */s/ Stephen Raslavich*
    ―――――――――――――
    Stephen Raslavich
    United States Bankruptcy Judge

Copies to:

Plaintiff's Counsel
Jason Greshes, Esquire
Beggin & Greshes
1628 JFK Blvd.
Suite 1700
Philadelphia, PA 19103

Defendant's Counsel
Allan K. Marshall, Esquire
Allan K. Marshall
1819 JFK Blvd. #400
Philadelphia, PA 19103

Chapter 7 Trustee
Christine C. Shubert, Esquire
10 Teaberry Drive
Medford, NJ 08055

United States Trustee
George M. Conway, Esq.
833 Chestnut Street
Suite 500
Philadelphia, PA 19106